IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-00716-FL

| | |
|---|---|
| ROBERT MANKES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) ORDER |
| v. | ) |
| | ) |
| | ) |
| FANDANGO, LLC and REGAL ENTERTAINMENT GROUP, | ) |
| | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on defendants' motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 92, 101). The issues presented are ripe for ruling. For the following reasons, defendants' motion is granted.

## BACKGROUND

On October 14, 2013, plaintiff, inventor and owner of United States Patent Number 6,477,503 (" '503 patent"), initiated this suit asserting claims against defendant Fandango, LLC, ("Fandango"), an online retailer of movie tickets, for patent infringement in violation of 35 U.S.C. § 271(a) and induced infringement in violation of 35 U.S.C. § 271(b).[1] Defendant responded with a motion to dismiss, later mooted by the court's allowance of plaintiff's motion to amend, resulting

---

[1] The same date, a corresponding lawsuit was filed by plaintiff against another operator of a reservation system aimed at selling tickets, alleging similar violations of or relating to the '503 patent. See Mankes v. Vivid Seats, Ltd., No. 5:13-CV-717-FL. That case voluntarily was dismissed on June 21, 2016.

in an amended complaint filed March 7, 2014. In answer filed March 24, 2014, defendant denied liability and asserted two counterclaims against plaintiff. (DE 37).

At the time plaintiff initiated this action, relevant law relating to plaintiff's claims was in a state of flux. The court allowed the parties joint motion to stay proceedings pending outcome of Limelight Networks, Inc. v. Akamai Technologies, Inc., 134 S. Ct. 2111 (2014). On June 2, 2014, in unanimous ruling, the Supreme Court held that liability for induced infringement only can be found when there is direct patent infringement. Id. at 2117. The Supreme Court remanded the case back to the United States Court of Appeals for the Federal Circuit for further proceedings. Ultimately stay was lifted in this case, where the court declined to continue it pending the Federal Circuit's address on remand.

Thereafter, plaintiff moved to dismiss defendant Fandango's counterclaims, (DE 50), and defendant filed a motion for judgment on the pleadings. (DE 55). On February 26, 2015, this court, applying relevant law as it then stood, granted judgment on the pleadings in favor of defendant. (DE 60). The February 26, 2015, order also held in abeyance plaintiff's motion to dismiss, pending further briefing. (Id.). However, before the court could address the merits of plaintiff's motion, defendant Fandango's counterclaims voluntarily were dismissed on March 5, 2015. (DE 61).

Following the court's February 26, 2015, order, plaintiff appealed to the Federal Circuit. During briefing on the merits of plaintiff's appeal, the Federal Circuit issued an en banc decision in Akamai Technologies, Inc. v. Limelight Networks, Inc., 797 F.3d 1020 (Fed. Cir. 2015) (en banc) (Akamai IV), which revised the legal standards this court had applied in granting judgment on the pleadings in favor of defendant. In Akamai IV, the Federal Circuit held that when more than one actor is involved in practicing the steps of a claimed method, a single entity will be liable for others'

2

performance of method steps, and ultimately direct infringement, "where that entity directs or controls the others' performance" or "where the actors form a joint enterprise." Id. at 1022.

On April 22, 2016, the Federal Circuit vacated this court's judgment on the pleadings against plaintiff and remanded the case for further proceedings in light of Akamai IV. Mankes v.Vivid Seats Ltd., 822 F.3d 1302, 1309 (Fed. Cir. 2016). Specifically, the Federal Circuit held that because this court's decision was "squarely based on [an] earlier, narrower [legal] standard," reinstatement and remand were appropriate for determining whether or not plaintiff's claims survived the new legal standard. Id. at 1305. Following the Federal Circuit's opinion, this court directed plaintiff to file an amended complaint.

On June 30, 2016, plaintiff filed the instant second amended complaint against defendants Fandango and Regal Entertainment Group ("Regal"), asserting claims for patent infringement in violation of 35 U.S.C. § § 271 et seq. (DE 81). Plaintiff alleges that defendant Fandango's operation of an Internet-based reservation system, in conjunction with defendant Regal's operation of a local reservation system, infringes the '503 patent. Plaintiff seeks declaratory and injunctive relief, monetary damages, and trial by jury.

On August 24, 2016, defendant Fandango moved to dismiss the instant complaint (DE 92). Defendant Regal joined in that motion. (DE 101). Defendants argue that plaintiff's patent claims are directed to an abstract idea and therefore fail to cover patentable subject matter under 35 U.S.C. § 101.

## STATEMENT OF FACTS

The facts alleged in plaintiff's second amended complaint are summarized as follows. Plaintiff is owner and inventor of the '503 patent, which issued on November 5, 2002. (DE 81 ¶

3

12–13). The '503 patent, entitled "Active Reservation System," claims methods for a system to control inventory when goods and services are sold both through the Internet and at a physical site. (Id. ¶ 13). Ordinarily, when vendors sell inventory online and at a physical site, inventory is divided and allocated between the two locations. U.S. Patent No. 6,477,503, col. 1.ll. 30–58. However, when inventory is divided, "neither [site] ha[s] contemporaneous information on the overall state of the local inventory." Id. at col. 1.ll. 43–67. As a result, inventory is often undersold. Id. at col. 1.ll. 57–58.

The '503 patent specification describes a method reservation system which allows vendors to control entire inventory at a single, local site. Id. at col. 2.ll. 58–60. The local site uses a local server to allocate, control and reserve inventory. Id. at col. 2.ll. 61–63. The local server communicates over the Internet to an online reservation server certain information regarding available inventory. Id. at col. 3.ll. 6–9. The reservation system then makes the available inventory accessible for purchase by consumers online. Id. at col. 3.ll. 10–12. When inventory is sold online, the Internet site communicates the sale to the local site, which then confirms the sale and updates total available inventory. Id. at col. 3.ll. 16–19. Confirmation of the sale, along with updated inventory, is then transmitted to the reservation server and forwarded to the consumer. Id. at col. 3.ll. 37–41. Any time a sale is made, the local site is able to control available inventory and communicate information regarding the same, regardless of whether the sale was made online or at the local site. Id. at col. 3.ll. 42–46.

These features of plaintiff's invention generally are found in the four claims of the '503 patent. Of the four claims, Claims 1 through 3 are at issue. Claim 1 is representative of the asserted claims, stating:

4

1. A method for operating an Internet based active reservation system for the purchase of goods and services, comprising:

   (a) providing an owner event server located at and operated by a local event owner having an available inventory of goods and services at a local site;

   (b) providing an active reservation server located at and operated by user remote from said local site, said active reservation server accepting only data from said owner event server and formatting said data for viewing by an Internet-based consumer;

   (c) allocating said available inventory by only said owner event server at all times between local inventory and Internet inventory;

   (d) adjusting said available inventory by only said event owner at said owner event server at all times based on purchases of goods and services at said local event site;

   (e) communicating said allocated Internet inventory only to said active reservation server;

   (f) receiving purchase requests for goods and services in said Internet inventory at said active reservation server from said Internet-based consumer;

   (g) communicating said purchase requests from said active reservation server to said owner event server;

   (h) accepting said purchase requests solely at said local event server and adjusting said Internet inventory only by said owner event server at all times to establish an adjusted Internet inventory;

   (i) communicating said accepting and said adjusted Internet inventory from said owner event server to said active reservation server; and

   (j) communicating said accepting and confirmation indicia relative thereto from said active reservation system to said Internet consumer.

Id. at col. 3.ll. 33– 67. Claims 2 and 3 differ slightly from Claim 1. Unlike Claim 1, Claim 2 specifies that information regarding available inventory be communicated through two separate Internet connections and that the local event server designate a rate structure for the goods and services being sold. Id. at col. 9.ll. 5–19. Additionally, Claim 3 specifies that the reservation server

5

display available Internet inventory "in a reservation server selected format on a website for viewing by prospective customers." Id. at col. 10.ll. 7–8.

Defendant Fandango operates an online reservation system, which sells tickets to movie screenings that are shown at defendant Regal's movie theaters. (DE 81 ¶ 16). Defendant Regal operates a local reservation system for movie screenings at its theaters. (Id. ¶ 19). Furthermore, each of defendant Regal's theaters has a box office, which sells movie tickets to local customers onsite and accesses defendant Regal's reservation system to effectuate sales. (Id. ¶ 15). The reservation system used by defendant Fandango, in conjunction with Regal's operation of a local reservation system, largely mimics that disclosed in the '503 patent.

## DISCUSSION

A.   Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint, "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To meet this standard, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

When ruling on a motion to dismiss, the court may consider the facts as alleged in the complaint, "documents attached to the complaint, . . .[and documents] attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007) (internal citations omitted).[2]

B.   Analysis

Defendants move for dismissal of the instant complaint on the basis that the '503 patent is invalid under 35 U.S.C. § 101. Patent eligibility under 35 U.S.C. § 101 is a question of law, which properly may be decided on a Rule 12(b)(6) motion. See OIP Techs., Inc., v. Amazon.com, Inc., 788 F.3d 1359, 1362 (Fed. Cir. 2015). Courts may resolve questions of patent eligibility under § 101 before engaging in formal claim construction. See Genetic Techs. Ltd. v. Merial L.L.C., 818 F.3d 1369, 1373 (Fed. Cir. 2016); Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada (U.S.), 687 F.3d 1266, 1273 (Fed. Cir. 2012).[3]

Under 35 U.S.C. § 101, a patent may be obtained for " any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has long held that "[l]aws of nature, natural phenomena, and abstract ideas" are excepted from § 101 and thus, are not patent-eligible. Alice Corp. Pty. Ltd., v. CLS Bank Int'l, 134 S. Ct. 2347, 2354 (2014) (internal quotations omitted). However, since "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas" at

---

[2]Where the '503 patent is attached to and referenced in plaintiff's second amended complaint (DE 81-1), the court may properly consider its contents in ruling on the instant motion. Trimble, 484 F.3d at 705.

[3]The parties do not identify any claim terms that require construction prior to deciding this motion. (See DE 92 at 8, n.3; see also DE 108 at 2). Accordingly, this court may resolve the instant motion without engaging in claim construction. See e.g., Content Extraction & Transmission L.L.C., v. Wells Fargo Bank, N.A., 776 F.3d 1343, 1349 (Fed. Cir. 2014).

7

some level, "an invention is not rendered ineligible from patent simply because it involves an abstract concept." Id. (internal citations omitted).

The Supreme Court has delineated a two-step process for "distinguishing patents that claim of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." Id. at 2355. The first step requires the court to determine whether the patent claims at issue are directed toward an abstract idea. Id. If the court concludes the claims are directed to an abstract idea, it proceeds to the second step. Id. At the second step, the court determines whether the patent contains an "inventive concept"– that is, whether there exists "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." Id. (internal quotations omitted).

Although the Supreme Court has not defined the precise contours of what constitutes an abstract idea, its prior cases on the issue are informative here. For example, most recently, in Alice, the Court found claims concerning "intermediated settlement" to be directed to an abstract idea. The Court reasoned that the "concept of intermediated settlement is "a fundamental economic practice long prevalent in our system of commerce," and thus qualifies as "an abstract idea beyond § 101's scope." 134 S. Ct. at 2356. Similarly, in Bilski v. Kappos, 561 U.S. 593 (2010), the Court invalidated a claimed method for hedging risk as directed to an abstract idea. Id. at 611.

In light of these guideposts, the patent claims at issue here are directed to an abstract idea. More specifically, the asserted claims are directed to the abstract idea of allocating, tracking, and controlling inventory. The claims recite methods for a reservation system in which an "event vendor uses a local event server to allocate, control, and reserve their inventory at their place of business,"

8

while making available inventory accessible for purchase by consumers on the Internet. '503 Patent, col. 3.ll. 6–8.

Like the concept of intermediated settlement in Alice and risk hedging in Bilski, the concept of allocating, tracking, and controlling inventory is a fundamental business and economic practice "long prevalent in our system of commerce." Alice, 134 S. Ct. at 2356; see also Bilski, 561 U.S. at 611; Life Techs. Corp., v. Unisone Strategic IP, Inc., No. CBM2015-00037, 2016 WL 5593329 (P.T.A.B. June 28, 2016) (finding the concept of inventory management to be an abstract, "fundamental economic practice" under the Supreme Court's guidance in Alice and Bilski). Thus, on their face, the instant claims are drawn to the abstract idea of allocating, tracking, and controlling inventory between two sites.

Plaintiff rejects the idea that his claims recite an abstract idea. Plaintiff contends that his invention is "not a well-known business concept applied to a general computer," but rather, "an integrated reservation method that combines aspects of a local reservation system and an online reservation system." (DE 104). Plaintiff argues that defendants "oversimplify" his claims and fail to account for specific limitations contained within them. To support his position, plaintiff relies on McRO, Inc. v. Bandai Namco Games Am., 837 F.3d 1299 (Fed. Cir. 2016), and Enfish, L.L.C. v. Microsoft Corp., 822 F.3d 1327 (Fed. Cir. 2016). These cases, however, are distinguishable from the present case.

In McRO, the Federal Circuit found a claimed process for "automating part of a pre-existing 3-D animation method[]" for "depict[ing] various facical expressions during speech" patent-eligible. 837 F.3d at 1303. The court reasoned that because the claimed process used an order of "rules with specific characteristics" to improve computer animation, such claims were not abstract and thus

9

while making available inventory accessible for purchase by consumers on the Internet. '503 Patent, col. 3.ll. 6–8.

Like the concept of intermediated settlement in Alice and risk hedging in Bilski, the concept of allocating, tracking, and controlling inventory is a fundamental business and economic practice "long prevalent in our system of commerce." Alice, 134 S. Ct. at 2356; see also Bilski, 561 U.S. at 611; Life Techs. Corp., v. Unisone Strategic IP, Inc., No. CBM2015-00037, 2016 WL 5593329 (P.T.A.B. June 28, 2016) (finding the concept of inventory management to be an abstract, "fundamental economic practice" under the Supreme Court's guidance in Alice and Bilski). Thus, on their face, the instant claims are drawn to the abstract idea of allocating, tracking, and controlling inventory between two sites.

Plaintiff rejects the idea that his claims recite an abstract idea. Plaintiff contends that his invention is "not a well-known business concept applied to a general computer," but rather, "an integrated reservation method that combines aspects of a local reservation system and an online reservation system." (DE 104). Plaintiff argues that defendants "oversimplify" his claims and fail to account for specific limitations contained within them. To support his position, plaintiff relies on McRO, Inc. v. Bandai Namco Games Am., 837 F.3d 1299 (Fed. Cir. 2016), and Enfish, L.L.C. v. Microsoft Corp., 822 F.3d 1327 (Fed. Cir. 2016). These cases, however, are distinguishable from the present case.

In McRO, the Federal Circuit found a claimed process for "automating part of a pre-existing 3-D animation method[]" for "depict[ing] various facical expressions during speech" patent-eligible. 837 F.3d at 1303. The court reasoned that because the claimed process used an order of "rules with specific characteristics" to improve computer animation, such claims were not abstract and thus

9

while making available inventory accessible for purchase by consumers on the Internet. '503 Patent, col. 3.ll. 6–8.

Like the concept of intermediated settlement in Alice and risk hedging in Bilski, the concept of allocating, tracking, and controlling inventory is a fundamental business and economic practice "long prevalent in our system of commerce." Alice, 134 S. Ct. at 2356; see also Bilski, 561 U.S. at 611; Life Techs. Corp., v. Unisone Strategic IP, Inc., No. CBM2015-00037, 2016 WL 5593329 (P.T.A.B. June 28, 2016) (finding the concept of inventory management to be an abstract, "fundamental economic practice" under the Supreme Court's guidance in Alice and Bilski). Thus, on their face, the instant claims are drawn to the abstract idea of allocating, tracking, and controlling inventory between two sites.

Plaintiff rejects the idea that his claims recite an abstract idea. Plaintiff contends that his invention is "not a well-known business concept applied to a general computer," but rather, "an integrated reservation method that combines aspects of a local reservation system and an online reservation system." (DE 104). Plaintiff argues that defendants "oversimplify" his claims and fail to account for specific limitations contained within them. To support his position, plaintiff relies on McRO, Inc. v. Bandai Namco Games Am., 837 F.3d 1299 (Fed. Cir. 2016), and Enfish, L.L.C. v. Microsoft Corp., 822 F.3d 1327 (Fed. Cir. 2016). These cases, however, are distinguishable from the present case.

In McRO, the Federal Circuit found a claimed process for "automating part of a pre-existing 3-D animation method[]" for "depict[ing] various facical expressions during speech" patent-eligible. 837 F.3d at 1303. The court reasoned that because the claimed process used an order of "rules with specific characteristics" to improve computer animation, such claims were not abstract and thus

9

patent-eligible. Id. at 1313. In so finding, the court held that when deciding whether a claim is directed to an abstract idea, a court must determine "whether the claims . . . focus on a specific means or method that improves the relevant technology, or . . . instead . . . merely invoke generic processes and machinery." Id. at 1314 (emphasis added). Similarly, in Enfish, the Federal Circuit found that claims directed to a logical model for a data storage and retrieval system, understood in light of their specific limitations, were not directed to an abstract idea, where such claims were unambiguously directed to improving computer functionality. 822 F.3d at 1335–36.

Plaintiff contends that his claims, like the claims in McRO and Enfish, are patent-eligible because they contain specific rules, which function to improve existing technology. For example, plaintiff claims that steps (g), (h) and (i) of Claim 1 "recite specific steps that enable the local event server to maintain control over local and Internet inventory, while enabling sales by the online reservation system." (DE 104 at 10). However, the specific rules provided in these steps, and in similar steps of the remaining claims, are insufficient to transform an otherwise abstract idea into a patent-eligible concept. Unlike the claims in McRO and Enfish, here, the method claims "merely invoke generic processes and machinery." McRO, 837 F.3d at 1314. Namely, the claimed methods control inventory by using standardized computers to store, allocate, communicate, and receive data over the Internet. Furthermore, plaintiff fails to allege that his method claims are directed to "an improvement in the functioning of a computer." Enfish, 822 F.3d at 1338 (emphasis added). Consequently, the method claims, viewed as an ordered combination, do not impose specific limitations sufficient to render plaintiff's claims patent-eligible.

Beyond the abstract idea of allocating, tracking, and controlling inventory, the asserted claims also fail to contain an inventive concept. As noted above, a claim directed to an abstract idea

10

contains an inventive concept if it contains "an element or combination of elements . . . sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." Alice, 134 S. Ct. at 2354 (internal citations omitted). "[W]holly generic computer implementation is not generally the sort of 'additional featur[e]' " required to render a claim patent-eligible. Alice, 134 S. Ct. at 2358 (quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc.,132 S. Ct. 1289, 1297 (2012)); see also buySAFE, Inc. v. Google, Inc., 765 F.3d 1350, 1355 (Fed Cir. 2014) ( "That a computer receives and sends . . . information over a network— with no further specification— is not even arguably inventive.").

Here, the asserted claims do not contain "an element or combination of elements . . . sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself. " Alice, 134 S. Ct. at 2354 (internal citations omitted). Like the claims in Alice, the claimed methods simply provide a method of implementing the well-known business practice of inventory management on conventional computer hardware. 134 S. Ct. at 2358–60; Life Techs., 2016 WL 5593329 (finding the concept of inventory management to be an abstract, "fundamental economic practice" under the Supreme Court's guidance in Alice and Bilski); see also Mortgage Grader, Inc. v. First Choice Loan Servs. Inc., 811 F.3d 1314, 1324–25 (Fed. Cir. 2016) (finding claims directed to anonymous loan shopping to be patent-ineligible even though they required computer-based communication of particular data between borrowers and lenders); Intellectual Ventures I L.L.C. v. Capital One Bank (USA), 792 F.3d 1363, 1367 (Fed. Cir. 2015) (finding that limitations involving the use of the Internet and telephone networks were insufficient to render a claimed method directed to tracking financial transactions patent-eligible); OIP Techs., Inc., v. Amazon.com, Inc., 788 F.3d 1359, 1364 (Fed. Cir. 2015) (finding claims directed to price-

optimization and implemented through generic computer processes and hardware to be patent-ineligible).

Relying on Bascom Global Internet Servs., Inc., v. AT&T Mobility, L.L.C., 827 F.3d 1341 (Fed. Cir. 2016), plaintiff argues that, even if his invention is abstract, his claims are still patent-eligible because they improve computer-based inventory management. Specifically, plaintiff argues that the "claims recite the specific manner in which the local event server and active reservation server interact to enable local control of all inventory." (DE 104 at 13). In Bascom, the Federal Circuit found an inventive concept "in the non-conventional and non-generic arrangement of known, conventional pieces," even though the asserted claims, taken individually, merely "recite[d] generic computer, network and Internet components, none of which [was] inventive by itself." Id. at 1349–1350. However, unlike the claimed method in Bascom, plaintiff's claimed method is not a "software-based invention that improves the performance of the computer system itself." 827 F.3d at 1351 (internal quotations omitted). Furthermore, the instant method claims do not require modification of the conventional use of the computer or Internet, or otherwise use computer servers or the Internet in a non-conventional combination or arrangement. Rather, the method claims merely disclose a method for allocating, tracking and communicating inventory information between two servers. See buySAFE, 765 F.3d at 1355 ("That a computer receives and sends . . . information over a network— with no further specification— is not even arguably inventive."). Thus, viewed individually, or as an ordered combination, the claims do not contain an inventive concept.

In sum, the claims at issue in the '503 patent are directed to an abstract idea and lack an inventive concept. Consequently, the asserted claims are patent-ineligible under 35 U.S.C. § 101.

12

Case 5:13-cv-00716-FL   Document 110   Filed 02/28/17   Page 12 of 13

Finding a sufficient basis for granting defendants' motion on these grounds, the court need not address the parties' additional arguments.

## CONCLUSION

Based on the foregoing, the court GRANTS defendants' motion to dismiss. (DE 92, 101). Plaintiff's second amended complaint is DISMISSED with prejudice. The clerk is DIRECTED to close this case.

SO ORDERED, this the 28th day of February, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge